WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christian Dale Lowery, | No. CV-12-01625-PHX-RCB |
| Plaintiff, | **O R D E R** |
| v. | |
| Unknown Barcklay,[1] et al., | |
| Defendants. | |

### *Introduction*

In this prisoner civil rights action, brought pursuant to 42 U.S.C. § 1983, *pro se* plaintiff inmate Christian Dale Lowery alleges that defendant Barcklay was deliberately indifferent to his "medical needs" in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.[2] Co. (Doc. 1) at 4,[3] ¶ 4. On February 14, 2013,

---

[1] The record is unclear as to the correct spelling of the defendant's last name. Throughout her response, the defendant's last name is spelled as it is in the caption – "Barcklay." However, while her supporting declaration is that of "Karen Barcklay[,]" the initial sentence states "Karen Barklay[,]" as does the signature line. Barcklay Decl'n (Doc. 23-1) at 2:11-12; 2:16; and 3:22. The court is unable to decipher the defendant's signature to verify how she spells her name. So, for now, the court will spell the defendant's last name as it appears in the caption and throughout the defendant's response, *i.e.*, "Barcklay."

[2] The court dismissed plaintiff's only other claim without prejudice to renew. Ord. (Doc. 3) at 5:14-15, ¶ (1).

[3] For uniformity and ease of reference, all citations to page numbers of docketed items are to the page assigned by the court's case management and electronic case filing (CM/ECF) system, and not to the plaintiff's handwritten page numbers.

1  defendant Barclay was personally served with the summons and complaint in this
2  action. (Doc. 6). When the defendant did not timely answer or otherwise respond to the
3  complaint, on April 12, 2013, nearly two months after service, the plaintiff filed a
4  declaration for entry of default. Three days later, on April 15, 2013, the Clerk of the
5  Court entered default as to defendant Barclay pursuant to Fed.R.Civ.P. 55(a). (Doc. 12).
6  Shortly thereafter, on April 24, 2013, pursuant to Fed.R.Civ.P. 55(b)(1),[4] plaintiff
7  Lowery filed a motion for entry of a default judgment against defendant Barclay in the
8  amounts of $90,000.00 for compensatory damages, $150,000.00 in punitive damages, and
9  $350.00 for plaintiff's filing fee. Mot. (Doc. 15) at 2. On June 3, 2013, the plaintiff filed
10  a second nearly identical motion for entry of default judgment against defendant Barclay
11  (Doc. 18).

12  While those two motions were pending, the Honorable Lawrence O. Anderson, a
13  Magistrate Judge in this District, "order[ed] Defendant and the Arizona Attorney
14  General's Office to show cause why a default judgment should not be entered against
15  Defendant." Order to Show Cause and Order ("OSC") (Doc. 19) at 5:16-17. The
16  defendant timely filed her response to that OSC, which she combined with a motion to set
17  aside the entry of default pursuant to Fed.R.Civ.P. 55(c). (Docs. 22 and 23). As the
18  Magistrate Judge permitted, the plaintiff filed a reply to the defendant's response to the
19  OSC (Doc. 35) and a response to the defendant's motion to set aside the default (Doc.
20  29). Because the Magistrate Judge expressly held plaintiff's two default judgment

---

[4] This particular subsection governs entry of default judgment by the clerk "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation[.]" Fed.R.Civ.P. 55(b)(1). As the Magistrate Judge correctly pointed out, plaintiff Lowery is seeking non-liquidated damages, that is, damages which are "[in]capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits[.]" OSC Ord. (Doc. 19) at 4:13-14 (quoting Holtsinger v. Briddle, 2007 WL 1080112, at *2 (E.D.Cal. April 4, 2007)). When seeking a default judgment as to such damages, a party must apply to the court, as opposed to the clerk and must "'prov[e] up'" those non-liquidated damages "'through an evidentiary hearing or some other means.'" Id. at 4:15 (quoting Holtsinger, 2007 WL 1080112, at *1). Consequently, plaintiff Lowery should have relied upon Fed.R.Civ.P. 55(b)(2) and not (b)(1). Especially because the plaintiff is *pro se*, and there is absolutely no prejudice to the defendant, the court can easily overlook his cite to the wrong subsection of Rule 55(b).

motions "in abeyance pending any response to th[at] [OSC][,]" OSC (Doc. 19) at 7:10-11 (emphasis omitted), those motions (Docs. 15 and 18) are currently pending before this court, as well as defendant Barcklay's motion to set aside the entry of default (Doc. 23).

Simultaneously with the filing of her motion to set aside entry of default, the defendant filed a motion for leave to file an untimely answer (Doc. 24), and lodges her proposed answer (Doc. 25). The court will address this pending motion as well. For the reasons set forth below, the court DENIES plaintiff's motions and GRANTS the defendant's motions.

### *Background*

As the Magistrate Judge ordered, defendant Barcklay, through the Arizona Attorney General's Office, timely responded to the OSC as to why a default judgment should not be entered against the defendant. In her supporting declaration, defendant Karen Barcklay explains what transpired on February 14, 2013, after she was served with the summons and complaint in this action. At that time, defendant Barcklay was working for Wexford Health Services which contracted with the Arizona Department of Corrections ("ADC") to provide health services to inmates housed in ADC facilities. Barcklay Decl'n (Doc. 23-1) at 2:19-20, ¶ 2. When she received the summons and complaint in this action, defendant Barcklay declares that she "was told by Belen Briseno, an Administrative Assistant with Wexford, that Cyndy Hale, a Wexford Facilities Health Administrator ("FHA") instructed that service packets were to be sent to Wexford." Id. at 2:24-25, ¶ 3.

Because "[t]hat information was consistent with [her] previous practice at Wexford[,]" defendant Barcklay "sent the service packet to the Wexford FHA" to be forwarded "to the appropriate person at Wexford[.]" Id. at 3:1-3, ¶ 4. Defendant Barcklay also "informed" the Wexford FHA that she "was working for the ADC at the time of the allegations in th[is] lawsuit." Id. at 3:3-4, ¶ 4. After "acknowledg[ing]" receipt of the service packet, the Wexford FHA "indicated" to defendant Barcklay that "she would take care of it." Id. at 3:4, ¶ 4. "To the best of [her] knowledge[,]"

1 defendant Barcklay explains that "the service packages at that time were directed to
2 Michael Bodek at Wexford for distribution to the appropriate attorneys for defense or
3 forwarded to ADC, if the staff member was employed by ADC at the time of the incident
4 underlying the lawsuit." Id. at 3:5-8, ¶ 5.

5 Defendant Barcklay claims that she did not hear anything "more about this lawsuit
6 until mid-June 2013 when [she] was contacted by an Arizona Assistant Attorney General
7 and received a copy of the [OSC] in the mail." Id. at 3:9-11, ¶ 5. Throughout this time,
8 defendant Barcklay "had no reason to believe [that] this lawsuit was not being properly
9 defended." Id. at 3:12, ¶ 7. Indeed, she had previously "followed Wexford's lawsuit
10 procedure" described above without incident. Id. at 3:13, ¶ 7. In addition, defendant
11 Barcklay notes that "[i]t [wa]s not unusual to have long periods of time without
12 communications with [her] attorneys after [she] receive[s] a lawsuit and deliver[s] it to
13 the appropriate people under Wexford company procedure or ADC policy when [she]
14 was employed by ADC." Id. at 3:13-16, ¶ 7. From defendant Barcklay's standpoint, the
15 foregoing shows that she has "not taken any action to delay or disrupt this litigation [.]"
16 Id. at 3:17, ¶ 8. Moreover, defendant Barcklay "believe[s] that the events resulting in the
17 entry of default against [her] . . . were completely out of [her] control." Id. at 3:17-19, ¶
18 8.

19 To support her motion to set aside the entry of default, defendant Barcklay also is
20 relying upon the declaration of Katherine Perez, an Executive Staff Assistant in ADC's
21 legal services section. In her declaration, Ms. Perez outlines that section's procedure for
22 processing newly commenced lawsuits in which ADC employees are named parties. If
23 an ADC employee is served or has delivered to them "any legal paperwork[,]" they are
24 "required to send" such paperwork to the "ADC's legal services section." Perez Decl'n
25 (Doc. 23-1) at 5:20-21, ¶ 2. When ADC's legal services section receives any "new
26 summons[es] or complaints[,]" Ms. Perez "enters the information in a central database to
27 keep track of these matters[.]" Id. at 5:22-23, ¶ 3. That information is then
28 "forward[ed] . . . to the appropriate party to respond, typically the Arizona Attorney

General's Office." Id. at 5:24-25, ¶ 3. After searching the "lawsuit database[,]" Ms. Perez declares that there is "no record of" ADC's legal services section "having received this lawsuit, . . . , from any source prior to June 18, 2013."[5] Id. at 6:1-3, ¶ 4. Based upon the foregoing, defendant Barcklay argues that she is entitled to have the entry of default against her set aside as Rule 55(c) permits. The court will address this defense motion first because if she prevails, the plaintiff's motions for entry of default judgment will be rendered moot.

### *I. Setting Aside Entry of Default*

Rule 59(c) allows a court to set aside an entry of default by the Clerk of the Court "for good cause[.]" Fed.R.Civ.P. 59(c). "To determine 'good cause,' a court must 'consider three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice' the other party." United States v. Signed Personal Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1091 (9th Cir. 2010) (quoting Franchise Holding II, 375 F.3d at 925-26). These factors, originating from Falk v. Allen, 739 F.2d 461 (9th Cir. 1984), "are disjunctive, such that a court may decline to vacate an entry of default upon a finding of any of the factors." See Comercializadora Recmaq v. Hollywood Auto Mall, LLC, 2013 WL 494476, at *2 (S.D.Cal. Feb. 6, 2013) (citing Brandt v. Am. Bankers Ins. Co. of Fla., 653 F.3d 1108, 1091 (9th Cir. 2011)) (other citation omitted). "Nonetheless, a district court is not, as a matter of law, required to deny a motion to set aside entry of default upon a finding of any of the factors." Id. (citing Brandt, 653 F.3d at 1111). By the same token though, "where timely relief is sought from a default and the movant has a meritorious defense, doubt, if any should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits." O'Connor v. Nevada, 27 F.3d 357, 364 (9th Cir. 1994) (internal quotation marks and citation omitted).

---

[5] Citing to Ms. Perez's declaration, the defendant indicates that "she received a copy of this lawsuit by email[,]" Mot. (Doc. 23) at 3:6-7 (citation omitted), but her declaration does not mention how she eventually received notice of this lawsuit.

1    Significantly, the Falk factors are "more liberally applied" where, as here, a party
2 is seeking to set aside an entry of default pursuant to Rule 55(c).  See Mesle, 615 F.3d at
3 1091 n. 1 (quoting Cracco v. Vitran Exp., Inc., 559 F.3d 625, 631 (7th Cir. 2009)
4 (quotations and citations omitted)).  "This is because in the Rule 55 context there is no
5 interest in the finality of the judgment with which to contend." Id. (citing Hawaii
6 Carpenters' Trust Funds v. Stone, 794 F.2d 508, 513 (9th Cir. 1986)).  Keeping with its
7 "oft stated commitment to deciding cases on the merits whenever possible[,]" the Ninth
8 Circuit in Mesle reiterated that "'judgment by default is a drastic step appropriate only in
9 extreme circumstances[.]'" Id. at 1091 (quoting Falk v. Allen, 739 F.2d 461, 463 (9th Cir.
10 1984)) (other citations omitted).   Mindful of the foregoing, along with "the fact that a
11 district court's discretion is especially broad when, as in this case, it is entry of default
12 that is being set aside, rather than a default judgment," the court will discuss in turn each
13 of the three Falk "good cause" factors enumerated above.  See Brady v. United States,
14 211 F.3d 499, 504 (9th Cir. 2000) (internal quotation marks and citation omitted).   In so
15 doing, the court also bears in mind that the burden is on defendant Barcklay, as "[t]he
16 party seeking to vacate the entry of default" to "demonstrat[e] that these factors favor
17 doing so." Zoom Elec. Inc. v. Int'l Broth. of Electrical Workers, 2013 WL 192515, at *2
18 (N.D.Cal. Jan. 27, 2013) (citing TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691,
19 696 (9th Cir.), *overruled on other grounds,* Egelhoff v. Egelhoff ex. rel. Breiner, 532 U.S.
20 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001)).

### *A. Culpable Conduct*

Turning to the first Falk factor, the defendant's potentially culpable conduct, the Ninth Circuit in TCI Group indicated that "a defendant's conduct is culpable if [s]he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." TCI Group, 244 F.3d at 697 (emphasis in original, citation and quotation marks omitted).  "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as

an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" Mesle, 615 F.3d at 1092 (quoting TCI Group, 244 F.3d at 697). The Ninth Circuit has "typically held that a defendant's conduct was culpable for purposes of the [good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." Id. at 1092 (quoting TCI Group, 244 F.3d at 697). With no explanation, the defendant assumes that the TCI Group standard applies here.

The court would be remiss, however, if it did not acknowledge a second line of Ninth Circuit cases announcing "a more stringent standard," whereby "a defendant's conduct is culpable if . . . she 'has received actual or constructive notice of the filing of the action and failed to answer.'" AF Holdings LLC v. Buck, 2013 WL 79949, at *3 (E.D.Cal. Jan. 4, 2013) (quoting Franchise Holding II v. Huntington Rests. Group, Inc., 375 F.3d 922, 926 (9th Cir. 2004)) (other quotation marks and citation omitted). More recently, in Mesle, "the Ninth Circuit clarified that the more stringent *Franchise Holdings* approach does not represent 'the ordinary standard for Rule 55(c) and 60(b) motions.'" U.S. v. $35,017 in U.S. Currency, 2010 WL 3619794, at *3 (N.D.Cal. Sept. 9, 2010) (quoting Mesle, 615 F.3d at 1093). "[I]n fact, the Mesle Court pointed out that the Ninth Circuit has "never applied" Franchise Holding II "to deny relief in the context of such motions except when the moving party is a legally sophisticated entity or individual." Mesle, 615 F.3d at 1093 (citing, *inter alia*, Franchise Holding II, 375 F.3d at 924 (notice of action received by counsel of company that later tried to set aside the default)). The Mesle Court also opined that "[i]t is possible to reconcile the language in *Franchise Holding II* with the standard in *TCI Group*." Id. "The panel suggested that the tougher standard from *Franchise Holding II* potentially applies when the defaulting party is legally sophisticated or represented by counsel because '[w]hen considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality.'" AF Holdings, 2013 WL 79949, at *4 (quoting Mesle, 615 F.3d at 1093). The Mesle Court did not "need [to] determine,

1 however, whether the *Franchise Holding II* standard applies to more than sophisticated 2 parties represented by counsel who may be presumed to be aware of the consequences of 3 their actions." Mesle, 615 F.3d at 1093. Instead, in Mesle the Ninth Circuit found it 4 "sufficient to observe that Mesle is not a lawyer and that he was unrepresented at the time 5 of the default[.]" Id. On that basis, the Ninth Circuit found that "the proper standard to 6 apply was that of *TCI Group*." Id.

Because defendant Barcklay is not a lawyer and was not represented when the Clerk entered default in this action, the court finds that, as in Mesle the TCI Group "intentional culpability" standard applies here. Applying that standard, the court has little difficulty finding that defendant Barcklay's conduct was not culpable. Despite plaintiff Lowery's contrary protestations, there is no evidence that defendant Barcklay acted in bad faith so as to support a finding of culpable conduct.

In response to the defendant's motion to set aside the entry of default, plaintiff Lowery specifically opted not to challenge the defendant's legal arguments or "alleged facts[,]" instead deferring to this court's assessment as to the validity of both. Resp. (Doc. 29) at 3. In his reply to the OSC (lodged the same day as his response), however, the plaintiff inconsistently abandoned the deferential tone of his response. In his reply, the plaintiff "disagrees" with defendant Barcklay's assertion that the entry of default was "completely out of her control." Reply (Doc. 35) at 4. Referencing defendant Barcklay's declaration, the plaintiff claims that she was aware that any legal documents served upon her were to be delivered to ADC's legal services section. The plaintiff thus accuses defendant Barcklay of "passing the buck[,]" when she forwarded the service packet in this case to a Wexford FHA. See Reply (Doc. 35) at 5, ¶ II (B).

The plaintiff is misconstruing defendant Barcklay's declaration. There is nothing in that declaration indicating that defendant Barcklay knew that service packets had to be delivered to ADC's legal services section. What defendant Barcklay actually stated is, "[t]o the best of my knowledge the service packages at that time were directed to Michael Bodek at Wexford for distribution to the appropriate attorneys for defense or forwarded

- 8 -

to ADC, if the staff member was employed by ADC at the time of the incident underlying the lawsuit." Barcklay Decl'n (Doc. 23-1) at 3:5-8, ¶ 5.  In any event, it is clear from her declaration that at the time of service defendant Barcklay was employed by Wexford.  It is equally clear that when she received the service packet in this case, defendant Barcklay complied with her employer's procedures in that regard.  Such compliance can hardly be said to rise to the level of culpable conduct.  This is all the more so considering the complete lack of evidence that defendant Barcklay's failure to timely answer allowed her "to take  advantage of the opposing party[.]"  See  Mesle, 615 F.3d at 1093 (internal quotation marks and citation omitted).  Nor did her failure to timely answer result in defendant Barcklay "interfere[ing] with judicial decisionmaking, or otherwise manipulate[ing] the legal process."  See id.  Consequently, the court finds that the culpable conduct factor weighs in favor of setting aside the entry of default here.

### *B.  Meritorious Defense*

The second Falk factor is whether defendant Barcklay has a meritorious defense.  "'A party in default . . . is required to make some showing of a meritorious defense as a prerequisite to vacating an entry of default.'"   Chrome Hearts, LLC v. Boutique Talulah, 2012 WL 4510692, at *3 (D.Nev. Sept. 28, 2012) (quoting Haw. Carpenters' Trust Funds, 794  F.2d at 513).  "A meritorious defense is one which, if proven at trial, will bar plaintiff's recovery."  Id. (quotation marks and citation omitted).  The defendant's burden is "minimal."  Mesle, 615 F.3d at 1094).  "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense[.]"  Id. Importantly, "the question whether the factual allegation [is] true is not to be determined by the court when it decides the motion to set aside the default."  Id. (internal quotation marks and citation omitted).  "Rather, that question would be the subject of the later litigation."  Id.  (internal quotation marks and citation omitted).  "The underlying concern 'is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default'"  Zoom Electric, 2013 WL 192515, at *4 (quoting Haw.

Carpenters' Trust Funds, 794 F.2d at 513).

At the same time though, "a 'mere general denial without facts to support it' is not enough to justify vacating a default or default judgment." Id. (quoting Franchise Holding II, 375 F.3d at 926) (other quotation marks and citation omitted); see also Chrome Hearts, 2012 WL 4510692, at *3 (quoting Cassidy v. Tenorio, 856 F.2d 1412, 1415 (9th Cir. 1988) (other quotation marks and citation omitted) ("'[M]ere legal conclusions, general denials, or simple assertions that the movant has a meritorious defense are, however, insufficient to justify upsetting the underlying judgment.'") So, for example, in the context of setting aside a default judgment, the Ninth Circuit in Franchise Holding II, 375 F.3d 922, held that the meritorious defense prong was not met where the party did not "present the district court with specific facts that would constitute a defense[;]" and instead "offered only conclusory statements that a dispute existed." Id. at 926 (citing Madsen, 419 F.2d at 6). A defendant cannot rely upon a general denial without supporting facts because "'reopening of the case in the absence of some showing of a meritorious defense would cause needless delay and expense to the parties and court system.'" Chrome Hearts, 2012 WL 4510692, at *3 (quoting Haw. Carpenters' Trust Funds, 794 F.2d at 513).

In the present action, the plaintiff alleges that on March 14, 2011, he injured his hand while working as a plumber while housed at ADC's Yuma facility. Co. (Doc. 3) at 3, ¶ 3. Initially, the plaintiff was seen by the on-call physician who, among other things, sutured the plaintiff's wound. Id. From that point on, according to the plaintiff, he was "wholly depend[e]nt on Dr. Barcklay for [his] medical care." Id. Plaintiff Lowery claims that he "made 9 contacts with health services seeking medical attention for his injured hand." Id. During those contacts, allegedly the plaintiff made various complaints about his injured hand, including reinjury. Id.

On April 19, 2011, the plaintiff alleges that defendant Barcklay notified him that "she had 'put in a request for an ortho[pedic] eval[][uation][,]'" which occurred on May 5, 2011. Id. at 3, ¶ 3. After concluding that the plaintiff had severed his tendon, the

1  plaintiff claims that the orthopedic surgeon informed him that "because so much time had
2  lapsed between [his] injury, [the] changes for a success[s]ful surgery and recovery were
3  greatly diminished." Id. at 4, ¶ 3.    The plaintiff had surgery on his hand on June 6,
4  2011.[6] Id. Complaining of diminished capacity to his hand and pain and suffering, the
5  plaintiff alleges that defendant Barcklay was "deliberate[ly] indifferen[t] to [his] medical
6  needs" by failing to "adequate[ly] and timely" provide him with medical care for his
7  injured hand. Id. at 4, ¶ 4; and at 3, ¶ 4.

8  Claiming that she "*will* present evidence that she responded reasonably to the
9  medical 'risk' presented by Lowery[,]" not that she has, defendant Barcklay argues that
10 she has a meritorious defense to the plaintiff's claim. See Resp. (Doc. 23) at 5:20-21
11 (emphasis added). Much like the "general proclamation" in Zoom Electric, 2013 WL
12 192515, at *5, that the defendant "*would be able to* establish the necessary facts to defend
13 himself[,]" the court finds that the foregoing "is not enough to justify" vacating the entry
14 of default here. See id. (emphasis added). Further, the defendant's bald assertion that
15 "there are substantial defenses and factual issues here and the facts in support of [her], if
16 true, would be a defense" also does not satisfy her burden as to the meritorious defense
17 element of good cause. See Resp. (Doc. 23) at 5:22-23 (citation omitted).

18 Defendant Barcklay accurately notes that the complaint does not allege that she
19 had any knowledge of the plaintiff's repeated requests for medical care. That omission,
20 without more, does not satisfy her burden of showing that she has a meritorious defense,
21 however.    The defendant fares no better by noting that the plaintiff's "orthopedic
22 evaluation was conducted shortly after" she requested it. Resp. (Doc. 23) at 5:12-13.
23 Again, without more, this bare assertion does not show that the defendant has a
24 meritorious defense to the plaintiff's deliberate indifference claim.   The defendant's
25 unsubstantiated assertions that: (1) ADC "physicians do not schedule appointments, nor
26 typically initially respond to inmate complaints[;]" and (2) "[s]uch responses are done by

---

[6] The complaint alleges June 6, 2012, but obviously that is an error as the Medical Grievance Appeal indicates that the plaintiff had his surgery on June 6, 2011, which is completely consistent with the time frames in the complaint. See Reply (Doc. 35), exh. D at 20, ¶ 4.

- 11 -

1 medical staff, who notify the physician if something can be done without an examination
2 or set up an appointment[]" also do not advance her argument that she has a meritorious
3 defense.[7]   Thus, although the defendant's burden is minimal at this juncture, for the
4 reasons just discussed, the court finds that the meritorious defense factor favors the
5 plaintiff and not the defendant.

### C. Prejudice

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." Mesle, 615 F.3d at 1095 (internal quotation marks and citation omitted).  Yet, in the present case, that is the plaintiff's sole argument against setting aside the entry of default.  Plaintiff Lowery claims prejudice because he has been "waiting for the defendant's answer since last year."  Reply (Doc. 35) 11. However, because there has been no showing that "the delay . . . result[ed] in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion[,]" and because the plaintiff has not shown that his "ability to pursue his claim will be hindered[,]"this factor favors granting the defendant's motion to set aside the entry of default.  See TCI Group, 244 F.3d at 701 (internal quotation marks and citation omitted).

In sum, because two of the three Falk factors demonstrate "good cause," the court grants defendant Barcklay's motion to set aside the Clerk's entry of default. See Chrome Hearts, 2012 WL 4510692, at *4 (granting defendant's motion to set aside entry of default.  This result is further compelled by the Ninth Circuit's long held view that "judgment by default is a drastic step appropriate only in extreme circumstances;" and

---

[7] Wisely, the defendant is not relying upon either her declaration or her lodged answer as bases for arguing that she has a meritorious defense.  The defendant's declaration is void of any facts pertaining to her purported meritorious defense; it pertains solely to the circumstances surrounding service. Similarly, the defendant's lodged answer also does not allege sufficient facts that, if true, would constitute a defense."  See Mesle, 615 F.3d at 1094.  In contrast to Parker v. McCarville Law Offices, PLC, 2010 WL 2197546, at *1 (D.Ariz. May 27, 2010), where the second Falk factor was met because the defendant's answer "contain[ed] several affirmative defenses supported by *specific facts*[,]" defendant Barcklay's answer lacks any specific or sufficient supporting facts.  See id. (emphasis added)  Rather, her answer consists of a mere general denial of liability and a recitation of a number of affirmative defenses, none of which include any supporting facts.

1 that "a case should, whenever possible, be decided on the merits."  See Mesle, 615 F.3d
2 at 1091 (quoting Falk, 739 F.2d at 463) (other citations and footnote omitted).

### II.  Motions for Entry of Default Judgment

The granting of defendant Barclay's motion to set aside entry of the default (Doc. 23), renders moot the plaintiff's motions for entry of default judgments (Docs. 15 and 18).  On this basis, the court denies both of plaintiff's motions.

### III.  Motion for Leave to File Untimely Answer

When an enlargement of time is sought, as here, after the expiration of a specified deadline, the movant must show it "failed to act because of excusable neglect." Fed.R.Civ.P. 6(b)(1)(B).  For the reasons previously discussed with respect to her motion to set aside the entry of default, defendant Barclay argues that the court should grant her leave to file her proposed lodged answer, which is undoubtedly not timely.   The plaintiff counters that the defendant "knew she was supposed to give [the service packet] to ADC legal services[,]" yet "she did not."  See Resp. (Doc. 30) at 1-2, ¶ 3.  Hence, the plaintiff contends that the court should deny the defendant's motion.  Additionally, the plaintiff is opposing the defendant's motion for the reasons set forth in his reply to the defendant's response to the OSC.

The defendant strongly disagrees with the plaintiff's characterization of the facts. Defendant Barclay did not state that she knew that she was supposed to provide ADC's legal services section with the service packet.  What she actually declared, as already discussed,  is that "[t]o the best of [the defendant's] knowledge[,]"  service packets were "directed to Michael Bodek at Wexford for distribution to the appropriate Wexford attorneys for defense or forwarded to ADC, if the staff member was employed by ADC at the time of the incident underlying the lawsuit."   Barclay Decl'n (Doc. 23-1).    The defendant  reiterates that the previously discussed reasons pertaining to her motion to set aside the entry of default apply equally to this motion for an extension of time.

"To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four-factor equitable test[ ]" based upon Pioneer Inv. Servs.

Co. v. Brunswick Assoc. Ltd., 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1261 (9th Cir. 2010) (citations omitted). While Pioneer involved the Federal Rule of Bankruptcy Procedure 9006(b)(1), the Ninth Circuit Court of Appeals has held that that four factor test applies to determinations of what constitutes "excusable neglect" under other rules containing that term, including Rule 6(b) of the Federal Rules of Civil Procedure. See, e.g., In re Veritas Software Corp. Secs. Litig., 496 F.3d 962, 973 (9th Cir. 2007) (applying Pioneer test to Rule 6(b) "excusable neglect" analysis). "Th[e] four factor [Pioneer] equitable test requires, at a minimum, examination of: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." Trueman v. Johnson, 2011 WL 6721327, at *6 (D.Ariz. Dec. 21, 2011) (citing Ahanchian, 624 F.3d at 1261 (citations omitted)). "[W]hat sorts of neglect will be considered 'excusable' . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer, 507 U.S. at 395.

Mindful that "a district court abuses its discretion if it does not consider each of the four Pioneer factors separately[,]" PLU Investments, LLC v. Intraspect Group, Inc., 2011 WL 1376192, at *2 (W.D.Wash. April 12, 2011) (citing, *inter alia*, Ahanchian, 624 F.3d at 1261), this court will proceed in exactly that way. In so doing, the court is keenly aware that while "balancing the Pioneer/Briones factors[,]" it "may not apply per se rules." See Ahanchian, 624 F.3d at 1261 (citation omitted). The court is also cognizant that as the party seeking an extension of time, the defendant "bear[s] the burden of establishing . . . excusable neglect[.]" See National Corporate Tax Credit Funds III v. Potashinik, 2009 WL 4049396, at *3 (C.D.Cal. Nov. 19, 2009).

Much like prejudice in the "good cause" analysis, prejudice in the "excusable neglect" context "requires greater harm than simply that relief would delay resolution of the case." See Lemoge, 587 F.3d at 1196 (citation omitted). Yet, as discussed earlier, delay is the plaintiff's sole basis for claiming prejudice. Just as delay was not persuasive

in the good cause context, it is not persuasive in the excusable neglect context. Furthermore, "[t]he Ninth Circuit has recognized that losing a previous 'quick but unmerited victory' is not considered prejudicial." Darling v. Green, 2012 WL 6189018, at *2 (C.D.Cal. Dec. 12, 2012) (quoting Ahanchian, 624 F.3d at 1262).   Thus, although the court has set aside the Clerk's entry of default, that is not considered prejudicial.

Next, the defendant's delay in filing this motion and lodging her proposed answer was not significant.  Although she filed the foregoing two and a half months after entry of the default, they were filed only slightly more than two weeks after she was ordered to respond to the OSC.  This delay is not long enough to justify denying the defendant's motion, especially given that this action is in its infancy.  Thus, the impact of allowing the defendant to file her answer late is relatively minimal.  This is all the more so given that the answer is drafted and already lodged.

The reason for the delay, defendant Barcklay's reliance upon her employer's procedure for processing service packets  -- a procedure which she had successfully employed in the past -- likewise favors a finding of excusable neglect here, as well as a finding that she was acting in good faith.  Bolstering this finding of good faith is the fact that the defendant responded to the OSC even before the ordered time *and* filed this motion for leave to file an untimely answer, along with lodging her proposed answer.

Balancing the equities in light of the four explicit Pioneer factors, the court, in the exercise of its discretion finds that defendant Barcklay has made the requisite showing of excusable neglect under Fed.R.Civ.P. 6(b)(1)(B).  This is all the more so given that "[t]his rule, like all the Federal Rules of Civil Procedure, '[is] to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits.'" Ahanchian, 624 F.3d at 1258-59 (quoting Rodgers v. Watt, 722 F.2d 456, 459 (9th Cir. 1983) (other citations omitted).   Accordingly, the court grants the defendant's motion for leave to file an untimely answer (Doc. 24), and directs the Clerk of the Court to immediately file the defendant's lodged proposed answer (Doc. 25) .

. . .

*Conclusion*

For all of the reasons discussed herein, the court hereby **ORDERS** that:

(1) the Plaintiff's Motions for Default Judgment (Docs. 15 and 18) are **DENIED**;

(2) the Defendant's Motion to Set Aside Default Under Fed.R.Civ.P. 55(c) (Doc. 23) is **GRANTED**;

(3) the Defendant's Motion for Leave to File an Untimely Answer (Doc. 24) is **GRANTED**; and

(4) the Clerk of the Court is directed to immediately file the defendant's lodged proposed answer (Doc. 25).

DATED this 6th day of January, 2014.

_____
Robert C. Broomfield
Senior United States District Judge